**Byron L. DEWEY, Relator,**

v.

**TOM THUMB FOOD MARKET, Department of Economic Security, Respondents.**

No. C2–85–97.

Court of Appeals of Minnesota.

May 21, 1985.

Byron L. Dewey, pro se.

Shawn M. Moynihan, Hertogs, Fluegel, Sieben, Polk, Jones & LaVerdiere, Hastings, Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

.Relator seeks review of the Commissioner of Economic Security's decision that he was discharged from his employment with Tom Thumb Food Market for misconduct. We affirm.

## FACTS

Tom Thumb Food Markets, Inc. is a corporation with more than 130 convenience food stores in Minnesota and Wisconsin. Relator Dewey worked at the Tom Thumb store in Princeton, Minnesota as a produce manager from June 1982 to April 19, 1984. Dewey worked with R.A., a minor and a junior in high school.

At the referee's hearing, the juvenile did not testify although he was subpoenaed. The referee and the commissioner based their determinations on the uncontroverted testimony of relator.

In December 1982, relator scheduled a trip to Minneapolis for the alleged purpose of visiting produce departments of some larger grocery stores. He asked R.A. to accompany him and told R.A. he was considering assigning him to the produce department.

Before leaving Princeton, relator told R.A. he would take him to a steambath in Minneapolis. Despite claiming he believed R.A. was 18 years old, relator asked R.A. to get his mother's permission. Relator knew R.A. did not seek or receive such permission.

After visiting two grocery stores, relator took R.A. to Big Daddy's Steambath in Minneapolis knowing it was a place of homosexual activity. He vouched for R.A.'s age and paid the admission fee but denies he made any sexual advances to R.A.

In April 1984, R.A. reported the incident to his mother and, at her insistence, to the employer. Relator was temporarily suspended with pay pending an investigation of the matter. He was terminated for misconduct on June 11, 1984 for taking a juvenile employee to a steambath while on employer's business.

## ISSUE

Is the commissioner's decision that relator's behavior was misconduct sufficient to disqualify him from the receipt of unemployment compensation benefits supported by the record?

## ANALYSIS

An employee who is discharged from employment for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(2) (1984). The evidence supports the commissioner's decision that relator's conduct with regard to the steambath incident amounted to misconduct. Relator knowingly took a juvenile employee to a site of homosexual activity while ostensibly on employer business. Such behavior showed a reckless indifference to the interests of his employer and is misconduct as defined in *Tilseth v. Midwest Lumber Company*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973).

## DECISION

Relator was properly discharged from his employment for misconduct and is disqualified from receiving unemployment compensation benefits.

Affirmed.